**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
CHERYL L. D.                 :    Civ. No. 3:21CV00704(SALM)
                             :
v.                           :
                             :
COMMISSIONER OF THE SOCIAL   :
SECURITY ADMINISTRATION[1]   :    July 28, 2022
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Cheryl L. D. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration ("the Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to

---

[1] Plaintiff has named Andrew Saul, a <u>former</u> Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. <u>See</u> Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

remand for further administrative proceedings. See Doc. #19.
Defendant moves for an order affirming the decision of the
Commissioner. See Doc. #25.

For the reasons set forth below, plaintiff's Motion to
Reverse the Decision of the Commissioner **[Doc. #19]** is **DENIED**,
and defendant's Motion for Order Affirming the Decision of the
Commissioner **[Doc. #25]** is **GRANTED**.

I.   **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for DIB on July 18, 2016,
alleging disability beginning October 15, 2015. See Certified
Transcript of the Administrative Record, Doc. #16, compiled on
August 12, 2021, (hereinafter "Tr.") at 145-55. Plaintiff later
amended her alleged onset date to April 1, 2016. See Tr. 109-10.
Plaintiff's application was denied initially on August 29, 2016,
see Tr. 155, and upon reconsideration on November 26, 2016. See
Tr. 170.

On January 16, 2018, plaintiff, represented by Attorney
Ivan Katz, appeared and testified before Administrative Law
Judge ("ALJ") Eskunder Boyd. See Tr. 104-44. Vocational Expert
("VE") Richard Barry Hall testified by telephone at the hearing.
See Tr. 134-43. On January 29, 2018, the ALJ issued an

---

[2] In compliance with the Standing Scheduling Order, plaintiff
filed a Statement of Material Facts, see Doc. #19-1, to which
defendant filed a responsive Statement of Facts. See Doc. #25-2.

unfavorable decision. See Tr. 18-37. On December 18, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's January 29, 2018, decision the final decision of the Commissioner. See Tr. 1-7. On January 22, 2019, plaintiff, still represented by Attorney Katz, filed a complaint in this Court seeking review of the ALJ's January 29, 2018, decision. See Cheryl L. D. v. Saul, No. 3:19CV00108(SALM) (D. Conn. Jan. 22, 2019) (hereinafter the "2019 Appeal"). On January 23, 2020, the Court granted plaintiff's motion for remand and ordered "the ALJ [to] conduct a new, full hearing on plaintiff's application, and consider all claims of error[.]" Tr. 1013. On February 19, 2020, the Appeals Council issued a "Notice of Order of Appeals Council Remanding Case to Administrative Law Judge[.]" Tr. 1015 (capitalization altered).

Following the Appeals Council's remand, on March 2, 2021, plaintiff, represented by Attorney Ben Shapiro, appeared and again testified before ALJ Boyd. See Tr. 916-57. VE Theresa Hopkins testified by telephone at the hearing. See Tr. 944-56. On March 19, 2021, the ALJ issued a second unfavorable decision. See Tr. 891-914. Plaintiff did not seek Appeals Council review of the ALJ's March 19, 2021, decision. See Doc. #1 at 3. ¶14. Accordingly, the ALJ's March 19, 2021, decision became the final decision of the Commissioner on May 19, 2021. See Tr. 892 ("If you do not file written exceptions and the Appeals Council does

3

not review [the ALJ's] decision on its own, [the ALJ's] decision will become final on the 61st day following the date of this notice.").

On April 22, 2021, the Supreme Court issued a ruling in Carr v. Saul, holding that "petitioners did not forfeit their" "Appointments Clause challenges by failing to make them first to their respective ALJs." 141 S. Ct. 1352, 1356 (2021). On May 24, 2021, plaintiff, still represented by Attorney Katz, filed a complaint in this Court seeking review of the ALJ's March 19, 2021, decision. See Doc. #1. On October 29, 2021, plaintiff filed a motion to reverse the Commissioner's decision or, in the alternative, to remand for further administrative proceedings. See Doc. #19. On February 8, 2022, defendant filed a motion to affirm the decision of the Commissioner. See Doc. #25. This case is now ripe for review under 42 U.S.C. §405(g).

## II.  CONSTITUTIONAL CLAIM

The Court first addresses plaintiff's claim that she is entitled to a new hearing based on the assertion that, because "the ALJ who presided at the first hearing and issued the first decision was the same ALJ who presided at the second hearing and issued the second order[,]" she is entitled to remand to a different ALJ. Doc. #19-2 at 23. Plaintiff asserts that the Supreme Court's intervening "decision in Carr v. Saul conclusively decided the issue." Id. at 22 (citing 141 S. Ct.

4

1352 (2021)) (footnote omitted). The Commissioner responds that "Plaintiff is not entitled to any additional relief for her challenge to the ALJ's 2018 decision[]" "[b]ecause she did not appeal this Court's January 2020 order and judgment[.]" Doc. #25-1 at 18. The Commissioner asserts that "[t]he only ALJ decision under review in this case is the March 16, 2021 decision which was issued by a properly appointed ALJ[,]" thus, there is no constitutional basis for reversal. Id. at 19.

When this matter was first before this Court, plaintiff argued:

> Eskunder Boyd, the ALJ who conducted the hearing and issued the decision in this case, was not properly appointed under the U.S. Constitution's Appointments Clause at the time of the hearing or the issuance of the decision and thus did not have legal authority to preside over this matter or issue a decision.

2019 Appeal, Doc. #14-2 at 13 (D. Conn. Apr. 29, 2019). The Court rejected this argument, finding that "plaintiff forfeited her Appointments Clause challenge by failing to timely raise it during the administrative proceedings below." 2019 Appeal, Doc. #18 at 23 (D. Conn. Jan. 23, 2020). In light of the Supreme Court's decision in Carr, that holding is no longer valid. See 141 S. Ct. at 1362. In Carr, the Supreme Court held that "claimants are not required to exhaust" Appointments Clause challenges in the Social Security "administrative proceedings to preserve them for judicial review[.]" Id. (emphasis added).

Accordingly, plaintiff was <u>not</u> required to raise her Appointments Clause challenge during the administrative process.

However, the Court granted plaintiff's motion to remand based on her <u>substantive</u> challenge to the ALJ's 2018 decision. <u>See</u> <u>2019 Appeal</u>, Doc. #18 at 19. The Court affirmatively denied plaintiff's request to remand the matter to a different ALJ. <u>See</u> <u>id.</u> at 23 ("[T]he Court will not remand this matter to a different ALJ[.]"). Plaintiff, understandably, elected not to appeal that decision, so that ruling became final. Effectively, now that plaintiff has received a second unfavorable decision from the same ALJ, she is asking the Court to revisit its prior decision denying remand to a different ALJ, even though she did not appeal that order. The Court will not, and cannot, disturb the finality of its prior ruling. <u>Cf.</u> Fed. R. Civ. P. 60(c) (permitting a party to seek relief from final judgment "no more than a year after the entry of judgment"); <u>Wiesner v. 321 W.</u> <u>16th St. Assocs.</u>, No. 00CV01423(RWS), 2000 WL 1585680, at *3 (S.D.N.Y. Oct. 25, 2000) ("In deciding a reconsideration and reargument motion, the court must not allow a party to use the motion as a substitute for appealing from a final judgment.").

After the Court remanded plaintiff's claim, but before the ALJ conducted a new hearing, the ALJ's appointment was ratified. <u>See</u> SSR 19-1p, 84 Fed. Reg. 9582-02, 9583 (Mar. 15, 2019) ("To address any Appointments Clause questions involving Social

6

Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of our ALJs and approved those appointments as her own."); see also Michael H. v. Comm'r of Soc. Sec., No. 1:20CV01466(DDB), 2022 WL 768658, at *16 (W.D.N.Y. Mar. 14, 2022) ("The ALJ who adjudicated Plaintiff's claim on January 10, 2020 held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Nancy Berryhill[.]"). Thus, the March 2, 2021, hearing, and March 19, 2021, decision at issue in this action were presided over and issued by a properly-appointed ALJ. See Govachini v. Comm'r of Soc. Sec., No. 19CV01433(ANB), 2020 WL 5653339, at *1 n.1 (W.D. Pa. Sept. 23, 2020) ("[T]he Acting Commissioner reappointed the SSA's ALJs under her own authority on July 16, 2018. This case was not remanded back to the Commissioner by this Court until well after that date, on September 26, 2018. Accordingly, [the ALJ] was properly appointed during the entirety of the administrative adjudication of this case after the Court had overturned her earlier decision." (citations omitted)).

Still, plaintiff asserts she is entitled to remand for yet another hearing before a new ALJ, relying on SSR 19-1p. See Doc. #19-2 at 23. SSR 19-1p states, in relevant part: "The Appeals Council will either remand the case to a different ALJ; issue a

7

new, independent decision; or, as appropriate, issue an order dismissing the request for a hearing." SSR 19-1p, 84 Fed. Reg. at 9584. SSR 19-1p indicates that the Appeals Council will remand cases already pending at the Appeals Council to different ALJs in an effort to avoid any potential constitutional violation. See id. at 9582 ("This ruling explains how we will adjudicate cases pending at the Appeals Council in which the claimant has raised a timely challenge to the appointment of an administrative law judge (ALJ) under the Appointments Clause of the United States Constitution in light of the Supreme Court's recent 2018 decision in Lucia v. SEC." (emphasis added)). The application of SSR 19-1p is limited to Appeals Council action, and does not apply to plaintiff's claim before this Court. The Appeals Council's practices are not binding on the Court. See Golden v. Colvin, No. 5:12CV00665(GLS)(ESH), 2013 WL 5278743, at *6 (N.D.N.Y. Sept. 18, 2013) (Social Security "[r]ulings are binding on all components of the Social Security Administration. However, they lack the force of law, and are not binding on courts." (citations and quotation marks omitted)). Thus, SSR 19-1p does not direct the Court to remand plaintiff's claim to a different ALJ.

In fact, the Supreme Court has made clear that remand to a different ALJ is not required to correct an Appointments Clause violation. See Lucia v. S.E.C., 138 S. Ct. 2044, 2055 n.5 (2018)

("[W]e do not hold that a new officer is required for every Appointments Clause violation."). Numerous courts considering the application of Lucia v. S.E.C. to Social Security decisions have found that it does not preclude the same ALJ from rehearing a plaintiff's claim for benefits on remand once that ALJ has been properly appointed. See, e.g., Ridenour v. Comm'r of Soc. Sec., No. 2:20CV13272(PTM), 2021 WL 7448514, at *12 (E.D. Mich. Dec. 14, 2021), report and recommendation adopted sub nom., 2022 WL 565583 (E.D. Mich. Feb. 24, 2022) (finding that the remedy in Lucia v. S.E.C. "does not preclude the most recent ALJ from rehearing [the] case on remand[]"); Croce v. Comm'r of Soc. Sec., No. 6:20CV01393(EJK), 2022 WL 2276879, at *3 (M.D. Fla. Feb. 9, 2022) ("Notably, the Lucia Court was concerned about an ALJ who has no reason to think he did anything wrong on the merits -- and so could be expected to reach all the same judgments. That is not the case here. The ALJ's original decision in the instant case was vacated on the merits[.]" (citation and quotation marks omitted)); see also Calcutt v. Fed. Deposit Ins. Corp., -- F.4th --, 2022 WL 2081430, *18 (6th Cir. 2022) ("To hold that all adjudications must start from zero after a judicial decision invalidating ALJ appointments would result in cumbersome, repetitive processes throughout the executive branch simply to produce findings and orders that would often be identical the second time around."). Thus, the

9

mere fact that the ALJ who presided over plaintiff's claim after remand was the same ALJ who presided over plaintiff's initial claim does <u>not</u> mandate reversal.

Plaintiff received a new, substantive hearing, with a substantively different decision, by an ALJ who had been properly appointed. Thus, the ALJ's 2021 decision presents no constitutional concern, and plaintiff is not entitled to remand on that basis.

## III. <u>STANDARD OF REVIEW -- SOCIAL SECURITY APPEALS</u>

The review of a Social Security disability determination involves two levels of inquiry. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard. Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999) (citations omitted). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion[;]'" it is "'more than a mere scintilla.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of New York v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)). The reviewing court's "responsibility is always to ensure that a claim has been fairly evaluated[.]" <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review --

10

evaluating whether substantial evidence supports the ALJ's conclusion -- if the Court determines that the ALJ failed to apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137, 146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity" by the ALJ to enable a reviewing court "to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or reject" the testimony of any witness, but "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Leslie H. L. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00150(SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation

11

marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## IV.  SSA LEGAL STANDARD

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. See 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" 42 U.S.C.
§423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that
an "impairment or combination of impairments ... significantly
limit[] ... physical or mental ability to do basic work
activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine
whether a person is disabled. See 20 C.F.R. §404.1520(a)(4). In
the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If
> [s]he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider [her]
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, [s]he has the residual functional
> capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases

13

> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

> Through the fourth step, the claimant carries the
> burdens of production and persuasion, but if the
> analysis proceeds to the fifth step, there is a limited
> shift in the burden of proof and the Commissioner is
> obligated to demonstrate that jobs exist in the national
> or local economies that the claimant can perform given
> [her] residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum.

Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The

residual functional capacity ("RFC") is "the most" a person is

still capable of doing despite limitations resulting from her

physical and mental impairments. 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

"[E]ligibility for benefits is to be determined in light of the

fact that the Social Security Act is a remedial statute to be

broadly construed and liberally applied." Id. (citation and

quotation marks omitted).

## V.   THE ALJ'S 2021 DECISION

Following the above-described evaluation process, the ALJ concluded that plaintiff "was not under a disability within the meaning of the Social Security Act from October 16, 2015, through" December 31, 2018.[3] Tr. 895.

At step one, the ALJ found that plaintiff did "not engage in substantial gainful activity during the period from her alleged onset date of October 16, 2015 through her date last insured of December 31, 2018[.]" Tr. 897. At step two, the ALJ found that plaintiff suffered from the severe impairments of "localized lower extremity osteoarthritis (OA), degenerative disc disease cervical and lumbar spine, irritable bowel syndrome

---

[3] A claimant seeking DIB for a period of disability must, in addition to presenting evidence of her disability, also satisfy the "insured status" requirements of the Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff must demonstrate that she was disabled prior to the expiration of her insured status, i.e., as of her date last insured. See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R. §§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's date last insured is December 31, 2018. See Tr. 1142.

At the 2018 hearing before the ALJ, plaintiff amended her alleged onset date to April 1, 2016. See Tr. 109-10. Neither plaintiff nor the ALJ addressed the onset date at the 2021 hearing. See generally Tr. 916-57. In her Statement of Material Facts, plaintiff asserts that the onset date is April 1, 2016. See Doc. #19-1 at 1 n.1. The Commissioner agreed that "the Court should rely on the April 1, 2016 date." Doc. #25-1 at 2 n.1. Accordingly, the relevant time period under consideration is the amended onset date of April 1, 2016, through December 31, 2018. See Tr. 895.

(IBS), fibromyalgia (FM), undifferentiated connective tissue disease, [and] Raynaud's disease[.]" Id. The ALJ found that these "impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." Id. The ALJ found that plaintiff had the non-severe impairments of "brachioradial pruritus and hypothyroidism[.]" Id. The ALJ further found that plaintiff's anxiety was "not a medically determinable impairment." Id.

At step three, the ALJ determined that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 898. The ALJ "considered listing 1.02(A), but" found that "the listing [was] not met because the claimant can ambulate effectively within the meaning of the listing." Id. The ALJ further found that "[l]isting 1.04(A) [was] not met because there is no evidence of nerve root compression[;]" "[l]isting 5.06 (considered for IBS), [was] not met because there is no evidence of obstruction of stenotic areas and no findings under the B criteria[;]" "[l]isting 14.06 [was] not met because there is no evidence of involvement of two or more organs/body systems; no repeated manifestations of undifferentiated or mixed connective tissue disease[;]" and "[l]isting 14.09 (considered for [fibromyalgia]), [was] not met because there is no evidence of

16

persistent deformity resulting in inability to ambulate effectively or perform fine and gross movements; nor evidence of persistent inflammation or deformity of peripheral joints." Id.

At step four, the ALJ found that plaintiff "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she was limited to: never climbing of ladders, ropes, or scaffolds; never kneel or crawl; occasionally climb ramps and stairs; occasionally balance, stoop, and crouch; frequently handle and finger bilaterally; and no work in exposure to cold temperatures." Id. The ALJ further concluded that plaintiff "was capable of performing past relevant work as a secretary." Tr. 904. The ALJ found that plaintiff's past relevant work as a secretary "did not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" Id. Because the ALJ found that plaintiff was capable of performing her past relevant work, he did not reach step five.

## VI.   DISCUSSION

Plaintiff asserts that the ALJ erred: (1) in his evaluation of plaintiff's fibromyalgia and chronic pain, see Doc. #19-2 at 1-8; (2) in his evaluation of the opinions of Dr. Umapathy, Dr. Bang, and Dr. Kaplan, see id. at 8-16; and (3) in his step four assessment with respect to plaintiff's past work. See id. at 16-22.

17

A.    **Fibromyalgia and Chronic Pain**

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2P, 2012 WL 3104869 at *2 (S.S.A. July 25, 2012). The ALJ determined that plaintiff's fibromyalgia is a severe impairment. See Tr. 897. However, the ALJ found that plaintiff was "not disabled" and "was capable of performing past relevant work as a secretary." Tr. 904-05.

Plaintiff asserts that the ALJ failed to consider the impact of plaintiff's fibromyalgia on her daily functioning, because he discredited her subjective complaints of pain and "failed to accord appropriate weight to the opinions of Dr. Bang" and did not "seek a medical source statement from Dr. Gordon-Dole." Doc. #19-2 at 3.

As an initial matter, the Court notes that plaintiff appears to argue that the ALJ concluded that her pain was not "real." Id. at 6. However, after an extensive discussion of plaintiff's pain, the ALJ expressly found "that [her] medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 899. Although the ALJ credited plaintiff's subjective complaints of pain, he found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with

18

the medical evidence and other evidence in the record[.]" Id.
Thus, the ALJ did not conclude that plaintiff's pain was not
"real," rather, he concluded that the pain did not limit her to
an extent that supported a finding of disability.

SSR 12-2p provides guidance on how the Commissioner
evaluates fibromyalgia in disability claims. See generally SSR
12-2p, 2012 WL 3104869. In relevant part, the ruling states:

> Once [a medically determinable impairment] is
> established, we then evaluate the intensity and
> persistence of the person's pain or any other symptoms
> and determine the extent to which the symptoms limit the
> person's capacity for work. If objective medical
> evidence does not substantiate the person's statements
> about the intensity, persistence, and functionally
> limiting effects of symptoms, we consider all of the
> evidence in the case record, including the person's
> daily activities, medications or other treatments the
> person uses, or has used, to alleviate the symptoms; the
> nature and frequency of the person's attempts to obtain
> medical treatment for symptoms; and statements by other
> people about the person's symptoms.

SSR 12-2p, 2012 WL 3104869 at *5. "Objective medical evidence is
evidence obtained from the application of medically acceptable
clinical and laboratory diagnostic techniques, such as evidence
of reduced joint motion, muscle spasm, sensory deficit or motor
disruption." 20 C.F.R. §404.1529(c)(2). In fibromyalgia cases,
if the objective medical evidence is inconsistent with a
plaintiff's testimony regarding her functional limitations, the
ALJ will "consider all of the evidence in the case record[.]"
SSR 12-2p, 2012 WL 3104869 at *5; see also Anysha M. v. Comm'r

of Soc. Sec., No. 3:19CV00271(CFH), 2020 WL 1955326, at *3
(N.D.N.Y. Apr. 23, 2020) ("When determining an RFC based on
fibromyalgia, the ALJ is not entitled to rely solely on
objective evidence -- or lack thereof -- related to
fibromyalgia, but must consider all relevant evidence, including
the longitudinal treatment record."). SSR 12-2p acknowledges
that fibromyalgia patients' subjective complaints may be
unsubstantiated by the objective medical evidence. See SSR 12-
2p, 2012 WL 3104869 at *5. In such cases, the ALJ is instructed
to look beyond the objective medical evidence and "consider all
of the evidence in the case record[.]" Id. Accordingly, the
pertinent question before the Court is whether the ALJ adhered
to SSR 12-2p in evaluating plaintiff's fibromyalgia.

The ALJ followed the steps set forth in SSR 12-2p, and
committed no error. First, the ALJ found that plaintiff's
fibromyalgia is a severe impairment. See Tr. 897. The ALJ next
considered the objective medical evidence, and concluded that
plaintiff's "statements concerning the intensity, persistence
and limiting effects of [her] symptoms [were] not entirely
consistent with the medical evidence and other evidence in the
record[.]" Tr. 899. Because plaintiff's statements about the
functional limitations cause by her fibromyalgia were "not
substantiated by objective medical evidence, the" ALJ considered

"other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Id.

The ALJ considered plaintiff's "daily activities[.]" SSR 12-2p, 2012 WL 3104869 at *5. The ALJ noted that plaintiff's daily activities included "bath[ing] and dress[ing] herself, and perform[ing] some household chores[,]" Tr. 899, going to the gym, "walking dogs, and doing physical therapy[.]" Tr. 901. The ALJ further noted "that during the relevant period, [plaintiff's] gym activity [was] steady, and, at times, daily." Tr. 903. The ALJ found that, although plaintiff "has some limitations," her "allegations ... underestimate [her] overall abilities." Tr. 900.

The ALJ also considered "the medications or other treatments [plaintiff] uses, or has used, to alleviate the symptoms[.]" SSR 12-2p, 2012 WL 3104869 at *5. The ALJ noted that "[t]reatment notes in 2017 reported successful treatment with medication changes," Tr. 897, and that plaintiff "stated that she has no side effects from her current medication regime[.]" Tr. 899.

In sum, the ALJ followed the steps set forth in SSR 12-2p. In doing so, he properly considered more than just objective medical evidence. The ALJ committed no error. See Anysha, 2020 WL 1955326, at *5 ("The ALJ's references to fibromyalgia and chronic widespread pain throughout her RFC analysis indicate

21

that she properly considered Plaintiff's fibromyalgia in determining Plaintiff's physical limitations that are supported by the evidence of record."); see also Burgos v. Astrue, No. 3:09CV01216(VLB), 2010 WL 3829108, at *1 (D. Conn. Sept. 22, 2010) (finding no error where the ALJ found plaintiff's allegations regarding the disabling effects of her fibromyalgia "were not supported by the objective medical evidence, her course of treatment, her medications, the medical opinions in the record, her daily living, her work history, and the overall inconsistencies in the record[]").

**B.    Evaluation of the Opinion Evidence**

Plaintiff argues that the ALJ erred in his evaluation of the opinions of Dr. Mallestappa Umapathy, Dr. Daisy Bang, and Dr. Norman R. Kaplan. See Doc. #19-2 at 8-16.

The Social Security Act and the regulations applicable to the treating physician rule were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r of Soc. Sec. Admin., 731 F. App'x 28, 30 n.1 (2d Cir. 2018). Where, as here, a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Poole v. Saul, 462 F. Supp. 3d 137, 147 (D. Conn. 2020) (citation and quotation marks omitted). Most notably,

[f]or claims filed before March 27, 2017, the ALJ's decision must account for the "treating physician rule": If the record contains a treating physician's opinion about the nature and severity of the claimant's impairments, the ALJ must determine whether, in light of the administrative record, that opinion is entitled to controlling weight, or something less.

Schillo v. Kijakazi, 31 F.4th 64, 69 (2d Cir. 2022).

## 1. Failure to Develop the Record -- Dr. Umapathy

Plaintiff asserts that the treating physician rule was not followed with respect to Dr. Umapathy because "ALJ never asked Dr. Mallesetappa Umapathy, who treated Ms. D'Aurio from at least February 5, 2013 and continued to treat her until October 14, 2020, to provide a function-by-function assessment of what Ms. D'Aurio could or could not do." Doc. #19-2 at 8 (citations omitted). Defendant responds that "neither the regulations nor the caselaw support Plaintiff's assertion that his case should be remanded to obtain an opinion from" Dr. Umapathy. Doc. #25-1 at 12.

Although plaintiff characterizes her argument with respect to Dr. Umapathy as a failure to apply the treating physician rule, it is properly characterized as an argument that the ALJ failed to develop the record. She does not contend that the ALJ improperly weighed an opinion by Dr. Umapathy, but that the ALJ failed to seek one.

"Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical

23

history even when the claimant is represented by counsel[.]"
Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir.
2015) (citation and quotation marks omitted). "The ALJ's duty to
develop the record reflects the essentially non-adversarial
nature of a benefits proceeding." Id. (citation and quotation
marks omitted).

> On March 26, 2012, the regulations were amended to delete
> the provision that imposed a duty to recontact a treating
> physician "when the report from [a claimant's] medical
> source contains a conflict or ambiguity that must be
> resolved, the report does not [contain all the necessary
> information,] [or does not] appear to be based on
> medically acceptable clinical and laboratory diagnostic
> techniques." Quinn v. Colvin, 2016 WL 4255020, *12 n.2
> (W.D.N.Y. 2016) (quoting 20 C.F.R. §404.1512(e) (before
> amendment)). Thus, where an ambiguity concerns an
> opinion provided by a treating physician, the ALJ has
> "discretion to 'determine the best way to resolve the
> inconsistency or insufficiency' based on the facts of
> the case." Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d
> 496, 505 (S.D.N.Y. 2014) (quoting 20 C.F.R.
> §§404.1520b(c)(1), 416.920b(c)(1)). The regulations
> nonetheless continue to "contemplate the ALJ
> recontacting treating physicians when 'the additional
> information needed is directly related to that source's
> medical opinion.'" Jimenez v. Astrue, 2013 WL 4400533,
> *11 (S.D.N.Y. 2013) (quoting How We Collect and Consider
> Evidence of Disability, 77 Fed. Reg. 10,651, 10,652
> (Feb. 23, 2012)).

Mura v. Colvin, No. 16CV06159(MWP), 2017 WL 2543939, at *4 n.5
(W.D.N.Y. June 13, 2017).

"However, where there are no obvious gaps in the
administrative record, and where the ALJ already possesses a
complete medical history, the ALJ is under no obligation to seek
additional information in advance of rejecting a benefits

24

claim." Swiantek, 588 F. App'x at 84 (citation and quotation marks omitted). "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant. The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]" Santiago v. Astrue, No. 3:10CV00937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citation omitted); see also Lena v. Astrue, No. 3:10CV00893(SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) ("To demonstrate prejudice [plaintiff] must show that the additional medical reports would undermine the ALJ's decision." (citation and quotation marks omitted)). Accordingly, plaintiff bears the burden of showing such harmful error. See Santiago, 2011 WL 4460206, at *2.

Plaintiff argues, with minimal discussion, that the ALJ failed to develop the record. The entirety of plaintiff's argument is:

> Interestingly, the ALJ never asked Dr. Mallesetappa Umapathy, who treated Ms. D'Aurio from at least February 5, 2013 (R. 411) and continued to treat her until October 14, 2020 (R. 1865), to provide a function-by-function assessment of what Ms. D'Aurio could or could not do. Not only was there no medical source statement from Dr. Umapathy before the ALJ, the handwritten treatment notes from Dr. Umapathy are all but illegible. No effort appears to have been undertaken by the ALJ to obtain legible treatment notes or transcriptions of them.

Doc. #19-2 at 8.

Some courts have found that an ALJ's duty to develop the
record is triggered where a treating physician's notes are
illegible. See, e.g., Jackson v. Barnhart, No. 06CV00213(MAT),
2008 WL 1848624, at *8 (W.D.N.Y. Apr. 23, 2008) (finding that
the ALJ should have gathered legible copies of treatment notes
after the ALJ found that the illegible notes did "not say that
the claimant was disabled[]" (citation and quotation marks
omitted)) (collecting cases); Maietta v. Comm'r of Soc. Sec.,
No. 17CV00370(WMS), 2019 WL 116981, at *4 (W.D.N.Y. Jan. 7,
2019) (finding that remand was warranted where "the ALJ rejected
[the treating psychologist's] opinion because his handwritten
notes are not only difficult to read, but are mostly
illegible[,]" but then relied on those notes in finding that
plaintiff was not disabled (citation and quotation marks
omitted)). However, the duty to develop the administrative
record is triggered "only if the evidence before [the ALJ] is
inadequate to determine whether the plaintiff is disabled."
Walsh v. Colvin, No. 3:13CV00687(JAM), 2016 WL 1626817, at *2
(D. Conn. Apr. 25, 2016) (citation and quotation marks omitted).
Where, as here, the plaintiff's medical record is extensive and
sufficient to support the ALJ's decision, the ALJ is not
required to further develop the record. See Matos v. Colvin, No.
13CV04525(CM)(JLC), 2014 WL 3746501, at *9 (S.D.N.Y. July 30,
2014), aff'd sub nom. Matos v. Comm'r of Soc. Sec., 618 F. App'x

14 (2d Cir. 2015) (finding that "the ALJ properly fulfilled his duty to develop the evidentiary record before making his determination that [plaintiff] was not entitled to disability benefits[]" where "the ALJ admitted into the record voluminous submissions from [plaintiff's] numerous physicians ..., as well as the various reports from consultative physicians[]" and plaintiff did not seek to "submit further documents or evidence for consideration"); Ramos v. Comm'r of Soc. Sec., No. 13CV06561(AJN), 2015 WL 708546, at *18 (S.D.N.Y. Feb. 4, 2015) (finding that "[t]he ALJ was not required to seek clarification of the record[]" where "the medical records" were "extensive[]"); cf. Lamboy v. Comm'r of Soc. Sec., No. 16CV01197(ER), 2017 WL 3493250, at *8 (S.D.N.Y. Aug. 15, 2017) (finding that the "medical record [was] far from complete[]" because it was "devoid of any medical notes, assessments, and testimony" in the relevant period and thus not extensive). The ALJ did not rely on Dr. Umapathy's notes because the record as a whole contained sufficient information for him to make a disability determination.

Notably, plaintiff makes no assertion that legible copies of Dr. Umapathy's notes would support her claim of disability. Again, it is plaintiff's burden to show that "additional medical reports would undermine the ALJ's decision." Lena v. Astrue, 2012 WL 171305, at *9 (citation and quotation marks omitted).

"There is no indication that [plaintiff] sought any additional time or assistance to submit further documents or evidence for consideration." Matos, 2014 WL 3746501, at *9 (collecting cases). Plaintiff filed her application for disability benefits on July 18, 2016, see Tr. 155, and appealed the first unfavorable decision to this Court on January 22, 2019. See Tr. 985. In plaintiff's initial appeal to this Court, she asserted in her Statement of Material Facts that "Dr. Umapathy's hand-written note[s] are essentially illegible[,]" but did not argue that the ALJ was required to contact Dr. Umapathy. 2019 Appeal, Doc. #14-1 at 2 (D. Conn. Apr. 29, 2019). After remand, the ALJ held a hearing on March 2, 2021, see Tr. 916, and issued a decision on March 19, 2021. See Tr. 891. If plaintiff believed that the ALJ needed Dr. Umapathy's notes in order to make a disability determination, she had ample opportunity to seek legible copies for the ALJ's consideration. Plaintiff's decision not to do so further suggests that any evidence that was missing as a result of the illegibility of Dr. Umapathy's notes was not significant. Accordingly, the ALJ was not required to contact Dr. Umapathy for legible copies of his notes.

2.    Treating Physician Rule -- Dr. Bang and Dr. Kaplan

Plaintiff asserts that the ALJ improperly evaluated Dr. Bang and Dr. Kaplan's opinions in violation of the treating physician rule. See Doc. #19-2 at 8, 12.

> With respect to the nature and severity of a claimant's impairment(s), the SSA recognizes a "treating physician" rule of deference to the views of the physician who has engaged in the primary treatment of the claimant. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations and quotation marks omitted).

"[E]ven when a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive." Id. at 129. Specifically, the regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §404.1527(c)(2)-(6). "After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's

29

opinion." Burgess, 537 F.3d at 129 (citations and quotation marks omitted).

The Second Circuit does not require a "slavish recitation of each and every factor [of 20 C.F.R. §404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013). However, "[f]ailure to provide ... good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." Burgess, 537 F.3d at 129–30 (citation and quotation marks omitted).

   i.   *Dr. Bang*

The Court previously remanded plaintiff's case based on the ALJ's failure to follow the treating physician rule with respect to Dr. Bang. See 2019 Appeal, Doc. #18 at 10-19. The Court found "that the ALJ erred in his evaluation of Dr. Bang's opinion by failing to adequately consider the required factors, and by failing to provide 'good reasons' for assigning it little weight." Id. at 18. Plaintiff asserts that on remand, again, "the ALJ improperly evaluated" the "medical source statement from Dr. Daisy Bang[.]" Doc. #19-2 at 8. Plaintiff argues that "[v]irtually all of the flaws in the ALJ's first decision in this claim ... insofar as his analysis of Dr. Bang's medical source statement is concerned were carried over to the decision in the case at Bar." Id. at 9-10 (citation omitted). Defendant

responds that "[h]ere, in contrast" to the ALJ's prior decision, "the ALJ explicitly discussed each of the four regulatory factors, and offered a far longer and more detailed explanation for why he had declined to afford the opinion weight[.]" Doc. #25-1 at 9.

The ALJ afforded Dr. Bang's opinion "partial weight." Tr. 903. Although "slavish recitation of each and every factor[]" used to determine how much weight to afford a treating physician's opinion is not required, Atwater, 512 F. App'x at 70, the ALJ in fact addressed all of the relevant factors here. See Tr. 903. The ALJ acknowledged the length, nature, and extent of the treatment relationship and the frequency of examination by noting that Dr. Bang "began treating the claimant on March 3, 2016, seeing her approximately every three months, thus indicating a treating relationship length of approximately nine months and four visits when the form was completed." Id. Likewise, the ALJ acknowledged Dr. Bang's expertise as "a rheumatologist and ... specialist in treatment for fibromyalgia." Id.

The ALJ also considered the evidence used to support the opinion and the opinion's consistency with the record:

> However, the undersigned finds that portions of the medical source statement are not supported by relevant evidence nor entirely consistent with the entire record. Accordingly, the undersigned accepts the opinion that the claimant retained the ability to work eight hours a

day for five days per week, but finds that the notations
for unscheduled breaks due to fatigue do not align with
the frequency of fatigued reported during appointments
with Dr. Bang. Moreover, the notation for frequency of
absences from work also does not correlate with later
notes from Dr. Bang, which relayed regular and increased
exercise, improvement with adjusting doses, and only
mild swelling during some visits (Ex. 34F, Pgs. 14-57).
Subsequent visits in 2018 with another rheumatologist,
Dr. Gordon-Cole, assessed that although she had some
characteristic features of fibromyalgia, the physical
examination noted full painless ROM in all joints,
normal muscle tone and strength, as well as no
deformities or instability in her right knee (Ex. 49F,
Pgs. 55-58).

Id. Thus, the ALJ did not "fail[] to adequately consider the

required factors," as he had in his prior opinion. 2019 Appeal,

Doc. #18 at 18.

Nonetheless, remand might still be warranted if the ALJ did

not give "good reasons for not crediting" Dr. Bang's opinion.

Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 700 (2d Cir.

2013) ("We have consistently held that the failure to

provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand." (citation

and quotation marks omitted). The ALJ must give more than "a

conclusory explanation[.]" Id. He must "comprehensively set

forth reasons for the weight assigned to a treating physician's

opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

The ALJ has done so here. He explained, with specificity, the

inconsistencies between Dr. Bang's opinion and the record that

resulted in his determination to afford Dr. Bang's opinion

partial weight. His explanation demonstrates that he adequately reviewed Dr. Bang's opinion, compared it to the record, and made a thorough, well-supported decision. Thus, the Court finds that the ALJ provided "good reasons for not crediting" Dr. Bang's opinion, as required.

The ALJ's "cursory discussion[,]" 2019 Appeal, Doc. #18 at 12, of Dr. Bang's opinion in his 2018 decision was insufficient to "properly consider a medical provider's opinion and/or explain [his] assessment of the provider's opinion[.]" Coleman v. Kijakazi, No. 3:20CV01588(VLB), 2022 WL 766127, at *8 (D. Conn. Mar. 14, 2022). The Court therefore found error. Here, in contrast, the ALJ provided a thorough explanation of his consideration of Dr. Bang's opinion, and his reasoning for affording her opinion partial weight. Although plaintiff may disagree with the ALJ's assessment, the ALJ followed the regulations in his consideration of Dr. Bang's opinion. Accordingly, remand is not warranted based on the ALJ's treatment of Dr. Bang's opinion.

ii.  *Dr. Kaplan*

Plaintiff asserts that the "ALJ's unsupported refusal to ascribe controlling weight to Dr. Kaplan's opinions was manifest error[,]" Doc. #19-2 at 14 (footnote omitted), and that "the ALJ appears to have placed the undue significance on his conclusion that 'Dr. Kaplan's treatment notes during the period prior to

33

the date last insured do not support the extent of limitations
opined in his June 2020 letter.'" Id. at 12 (quoting Tr. 904)
(footnote omitted) (sic). Defendant responds that "[t]he ALJ
also considered Dr. Kaplan's opinion in accordance with agency
rules. The ALJ pointed out that Dr. Kaplan's treatment reports
suggested she had more mobility than his medical opinion." Doc.
#25-1 at 11 (citations omitted).

Plaintiff's argument that the ALJ did not follow the
treating physician rule with respect to Dr. Kaplan is limited to
identifying portions of the record that plaintiff argues are
consistent with Dr. Kaplan's opinion, and asserting that "the
ALJ cherry-picked the Record." Doc. #19-2 at 13 n.23.

"Although the treating physician rule generally requires
deference to the medical opinion of a claimant's treating
physician, the opinion of the treating physician is not afforded
controlling weight where, as here, the treating physician issued
opinions that are not consistent with other substantial evidence
in the record, such as the opinions of other medical experts."
Halloran, 362 F.3d at 32 (citations omitted). "'Cherry picking'
... refers to an ALJ picking and choosing within a single
medical opinion, crediting the portions that support
the ALJ's findings and ignoring the portions that do not. Such a
practice 'suggests a serious misreading of evidence, or failure
to comply with the requirement that all evidence be taken into

account, or both.'" Katrina M. v. Comm'r of Soc. Sec., No.
19CV06777(WMS), 2021 WL 508090, at *4 (W.D.N.Y. Feb. 11, 2021)
(quoting Dowling v. Comm'r of Soc. Sec., No. 5:19CV01558(DJS),
2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015)). "However, it
is also 'not require[d] that [the ALJ] have mentioned every item
of testimony presented to him or have explained why he
considered particular evidence unpersuasive or insufficient to
lead him to a conclusion of disability.'" Thomas v. Berryhill,
337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (quoting Mongeur v.
Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). An ALJ's decision
to discuss only certain pieces of evidence relevant to the
disability determination does not mean the ALJ engaged in
impermissible "cherry-picking."

As an initial matter, the Court notes that plaintiff
asserts that the ALJ placed "undue significance" on his finding
that Dr. Kaplan's treatment notes within the relevant period did
not support the limitations in his opinion. See Doc. #19-2 at
12. Dr. Kaplan's opinion is dated June 25, 2020, see Tr. 1825, a
year and a half after the end of the relevant period. See Tr.
895 (Plaintiff "has acquired sufficient quarters of coverage to
remain insured through December 31, 2018[.]"). Dr. Kaplan states
that plaintiff's "symptoms have lasted since October of 2015"
but primarily addresses plaintiff's symptoms "[a]t this
point[.]" Tr. 1827. "[A] medical opinion rendered well after a

plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period." Kudrick v. Comm'r of Soc. Sec., No. 1:19CV01343(WBC), 2020 WL 2933234, at *8 (W.D.N.Y. June 3, 2020) (collecting cases); see also Williams v. Colvin, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) ("[T]he ALJ was not required to consider" medical opinions that "fell outside of the relevant time period."). However, the ALJ may not discount an opinion solely because it was rendered after the plaintiff's date last insured. See Kudrick, 2020 WL 2933234, at *8 (A treating physician's "opinion cannot be dismissed simply because the date provided was after Plaintiff's date last insured."). The ALJ noted that Dr. Kaplan's opinion was issued after the date last insured, but he still provided a thorough explanation regarding his reasoning for affording it partial weight, and did not reject it solely because of its date.

With respect to the ALJ's explanation for affording Dr. Kaplan's opinion partial weight, he did not impermissibly "cherry-pick" the record. The ALJ acknowledged that Dr. Kaplan "wrote that the claimant is only able to walk one block, stand for fifteen to twenty minutes at a time for three to four times a day, requires unscheduled breaks two to three times a day for fifteen to twenty minutes, lift five pounds frequently, and further described significant off task and absenteeism

behaviors[,]" but found that these limitations were contradicted by Dr. Kaplan's own notes within the relevant period, and the "physical therapy notes from Ivy Rehab during the relevant period[.]" Tr. 904. Substantial evidence supports these conclusions.

Plaintiff's fibromyalgia pain is well-documented throughout the record. However, the record also contains substantial evidence that plaintiff is able to perform light work without the significant limitations described in Dr. Kaplan's opinion. The record contains repeated references to plaintiff's ability to walk and exercise; her improving pain; and lack of joint pain. See, e.g., Tr. 65 (October 19, 2017: "Decreasing Pain[]" and "ability to complete [activities of daily living] with only mild restriction due to pain[.]"); Tr. 767 (October 4, 2016: "Goes to the gym 5 days a week and is able to exercise. She feels better after exercise."); Tr. 773 (January 30, 2017: "Doing well on Armour, feels much better. She is able to exercise now. Still symptomatic fibromyalgia but better."); Tr. 776 (June 28, 2017: "Feeling ok," and "[e]ats healthy and exercises daily."); Tr. 823 (August 2, 2017: "She is exercising, is doing 'crunch', walking and going to the gym."); Tr. 930 (plaintiff's testimony that she regularly went to the gym); Tr. 1525 (September 10, 2018: "Exercise includes aerobic, cycling and walking. Exercises 2-3 times a week."); Tr. 1526 (September

10, 2018: "On examination of her joints she had normal DIPs, PIPs & MCPs. She had full ROM of her wrists, elbows & shoulders. She had full ROM of her hips. Knees crepitus in her knees L >> Right had FROM and there was no evidence of an effusion; she had no instability; no varus or valgus deformities."). Notably, the record also lacks evidence supporting the significant limitations described by Dr. Kaplan. See Sholun v. Astrue, No. 3:09CV00609(CFD)(TPS), 2009 WL 4057917, at *2 (D. Conn. Nov. 20, 2009) ("But, the absence of corroborating evidence is arguably equally supportive of the ALJ's finding. The absence of evidence can be evidence."); Francis v. Comm'r of Soc. Sec., No. 20CV04619(BMC), 2021 WL 3129873, at *3 (E.D.N.Y. July 23, 2021) ("On the record of this case, the ALJ properly recognized that absence of evidence was evidence of absence."). The question is not whether substantial evidence supports plaintiff's position, but whether substantial evidence supports the ALJ's conclusion. See Gentile v. Saul, No. 3:19CV01479(SALM), 2020 WL 5757656, at *12 (D. Conn. Sept. 28, 2020).

The ALJ specifically acknowledged and considered plaintiff's complaints of pain due to fibromyalgia; he did not "cherry-pick" evidence in the record, he simply weighed it. See Tr. 898-904. Thus, the ALJ provided "good reasons" for declining to afford Dr. Kaplan's opinion controlling weight, and those reasons were supported by substantial evidence. Accordingly, the

ALJ properly followed the treating physician rule with respect to Dr. Kaplan.

###    C.    Step Four -- Past Relevant Work

Plaintiff contends that the ALJ's step four findings are not supported by substantial evidence. Specifically, plaintiff asserts that "the ALJ has concluded that [she] can return to her past work[]" as a Secretary "[w]ithout an adequate factual basis," Doc. #19-2 at 20, and without making "'a specific and substantial inquiry into the relevant physical and mental demands' of the position of 'Secretary.'" Id. at 16. Plaintiff asserts that there is no evidence that she can "meet the attendance requirements of" her past work, and that she "cannot perform the necessary fingering and handling requirements of the job, nor can she perform a job that required 'half sitting, half standing/walking.'" Id. at 20-21. Defendant responds: "The ALJ's finding -- that Plaintiff retained the residual functional capacity to perform her past relevant work as a secretary -- is supported by substantial evidence[.]" Doc. #25-1 at 14. Defendant further responds that plaintiff "seems to argue that the ALJ was required to assess how she actually performed" her past work, but that the ALJ was not required to do so "because he assessed the demands of the job in the national economy with the help of the vocational expert[.]" Id. at 16.

"Pursuant to both case law and Social Security Ruling 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Matejka v. Barnhart, 386 F. Supp. 2d 198, 204-05 (W.D.N.Y. 2005) (emphasis added) (citation and quotation marks omitted). "Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." SSR 82-62, 1982 WL 31386, *3 (S.S.A. 1982). "A disability claimant bears the burden of proving that she cannot return to her past relevant work, either as it is performed in the national economy, or as she actually performed it." Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013).

Plaintiff appears to argue that the ALJ should have made a more detailed and substantial inquiry into her past work as actually performed. See Doc. #19-2 at 18 ("The issue of what the actual 'relevant physical and mental demands' ([emphasis] added) of [plaintiff's] work for her husband's building contracting company Connecticut were never addressed in an adequate manner

by the ALJ at the hearing."); id. at 17 ("The only indication of Record as to what [plaintiff's] 'Secretary' job actually consisted of is provided at R. 266; it noted that she was required to 'write, type, or handle small objects' for 2.5 hours per day, and required stooping and crouching for half an hour each per day."). However, the ALJ was not required to find that plaintiff retained the RFC to perform her past relevant work as it was actually performed and as it is generally performed in the national economy, rather, the ALJ must determine plaintiff's capacity to perform her past relevant work as it was actually performed or as it is generally performed. See Mack v. Comm'r of Soc. Sec., No. 17CV00924(LJV), 2019 WL 2027214, at *4 (W.D.N.Y. May 8, 2019) ("The regulations do not require explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." In other words, the claimant has the burden of showing that she cannot perform past relevant work as she actually performed it and as that work is performed generally." (citation and quotation marks omitted)).

The ALJ made a specific and substantial inquiry into the demands of plaintiff's past relevant work of Secretary, as it is generally performed in the national economy, when he presented hypotheticals and conducted further examination of the VE. See Tr. 944-56; see also Filer v. Comm'r of Soc. Sec., 435 F. Supp.

3d 517, 522 (W.D.N.Y. 2020) (finding that ALJ properly considered plaintiff's past relevant work because: "At the hearing, the ALJ described the limitations set forth in the RFC that she ultimately assessed, and asked whether a hypothetical individual with Plaintiff's age and education could perform Plaintiff's [past relevant work] as actually performed or generally performed in the national economy." (citation and quotation marks omitted)); Tr. 904 (ALJ's decision explaining that the VE "classified the claimant's past work as a secretary, DOT 201.362-030, sedentary exertional demand, skilled, specific vocational preparation (SVP) code of 6[]").

The ALJ considered the attendance, fingering and handling, and sitting and standing requirements of the Secretary job. With respect to attendance and sitting/standing, the ALJ specifically asked the VE about the attendance requirements, and various sitting/standing requirements, see Tr. 947-48, 51, but concluded that the record did not support any restrictions for absenteeism or sitting/standing. See Tr. 903-04. With respect to fingering and handling, the ALJ incorporated a restriction that plaintiff could only "[f]requently handle and finger[]" into the hypothetical he presented to the VE, Tr. 946, and ultimately incorporated this restriction into the RFC. Tr. 898. The VE opined that an individual with that restriction would be able to perform plaintiff's past relevant work of secretary. See Tr.

946. Plaintiff makes no argument that the ALJ should have included additional restrictions in the RFC. See generally Doc. #19-2; see Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff bears the burden of "prov[ing] a more restrictive RFC[]"). The ALJ considered the physical demands of performing plaintiff's past relevant work as a Secretary as it is generally performed in the national economy, and made no error by doing so.

Plaintiff also appears to argue that the ALJ should have made a more detailed and substantial inquiry into the mental demands of plaintiff's past work. See Doc. #19-2 at 18 (emphasizing mental demands over physical demands). At the hearing held on March 2, 2021, the ALJ made limited inquiries into the nonexertional demands of plaintiff's past work. The ALJ's inquiry regarding nonexertional demands was limited to asking the VE about the "off-task threshold[,]" Tr. 950, after plaintiff testified that she had trouble concentrating due to her physical limitations. See Tr. 929. The ALJ concluded that plaintiff did not have any severe mental impairments, see Tr. 897-898, and that plaintiff did not have any nonexertional limitations. See Tr. 898-904.

The ALJ was only required to inquire into the relevant demands of plaintiff's past work. See Matejka, 386 F. Supp. 2d at 204-05. Although plaintiff challenges the ALJ's lack of

inquiry into the mental demands of her past work, plaintiff did
not claim that she suffered from mental limitations at any
point. See, e.g., Tr. 145-46 (disability determination
explanation listing the following "allegations of
impairments[:]" "Fibromyalgia[;] C.T. disorder borderlin[e]
Lupus[;] Severe Arthritis[;] Autoimmune disease[;] [Antinuclear
Antibody] positive"). Similarly, plaintiff does not challenge
the ALJ's finding that plaintiff's anxiety was "not a medically
determinable impairment[]" or the failure to include any
nonexertional restrictions in the RFC. Tr. 897; see generally
Doc. #19-2. Again, "the ALJ should consider information about
those work demands which have a bearing on the medically
established limitations." Goldman v. Colvin, No. 13CV03291(KMK),
2016 WL 3522281, at *2 (S.D.N.Y. June 22, 2016) (emphasis added)
(citation and quotation marks omitted). Because the ALJ found
that plaintiff did not have any mental limitations, he was not
required to inquire into the mental demands of plaintiff's past
work. Cf. Steficek v. Barnhart, 462 F. Supp. 2d 415, 421
(W.D.N.Y. 2006) (finding that the ALJ erred when "[h]e made no
findings as to the mental demands of such work, despite his own
finding (not to mention those of the medical sources referred to
above) that plaintiff suffers from anxiety disorder, dysthymia
(a form of depression), and a personality disorder[]"); Abbott
v. Colvin, 596 F. App'x 21, 23 (2d Cir. 2015) (finding that the

ALJ erred by not considering the mental demands of plaintiff's past work where the ALJ failed to address numerous "mild limitations" due to plaintiff's "depression and attention deficit disorder[]" and plaintiff "repeatedly emphasized the nonexertional demands associated with her past work"); Goldman, 2016 WL 3522281, at *2 (finding that the ALJ should have inquired into the mental demands of plaintiff's past work because "Plaintiff's impairments included non-physical ones such as memory/attention issues and depression[]") (collecting cases). Thus, the ALJ committed no error by not making a more detailed inquiry into the mental demands of plaintiff's past work.

Accordingly, the ALJ made no legal error when he concluded that plaintiff could perform her past relevant work as a secretary.

## VII. <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #19]** is **DENIED**, and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #25]** is **GRANTED**.

It is so ordered at Bridgeport, Connecticut, this 28th day of July, 2022.

_____/s/_____
SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
